## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOSEPHINE STURDEVANT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-643-JED-PJC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Josephine Sturdevant ("Sturdevant"), seeks judicial review of the decision of

the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying

Sturdevant's application for disability insurance benefits Title II of the Social Security Act, 42

U.S.C. §§ 401 *et seq.*  The matter has been referred to the undersigned Magistrate Judge for

report and recommendation.  For the reasons discussed below, the undersigned recommends that

the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act only if his

"physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a

disability claim.  20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th

Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is

or is not disabled, evaluation under a subsequent step is not necessary."  *Lax*, 489 F.3d 1080,

1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries:

first, whether the decision was supported by substantial evidence; and, second, whether the

correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to

support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Wall*, 561

F.3d at 1052  (quotation and citation omitted).  Although the court will not reweigh the evidence,

the court will "meticulously examine the record as a whole, including anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test has

been met."  *Id.*

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

## Background

Sturdevant was thirty-five years old on the alleged date of onset of disability and thirty-nine on the date of the Commissioner's final decision.  [R. 1, 155].  She has a seventh grade education and has not obtained her GED.  [R. 34].  She has previous experience as a tire and lube department manager, fast food cook, nurse's aide, parts assembly line worker, plant nursery worker and yard care worker.  [R. 234].  In her application, she claimed to have been unable to work since June 1, 2011, as a result of injuries to her knee and right foot, hip and back pain, asthma, dyslexia and difficulty moving.  [R. 243].

## The ALJ's Decision

In his decision, the ALJ found that Sturdevant met insured status requirements through March 31, 2016, and, at Step One, that she had not engaged in any substantial gainful activity since her alleged onset date of June 1, 2011.  [R. 17].  He found at Step Two that Sturdevant had severe impairments of obesity, status post right foot fracture, and impairments of the right knee, ankle and shoulder.  *Id.*

At Step Three, he found that Sturdevant's impairments did not meet or medically equal any listing.  [R. 17].  He concluded that she had the following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c).  She can lift/carry or push/pull 50 pounds occasionally and 25 pounds frequently.  With the dominant right arm alone, she can lift/carry 15 pounds occasionally and 5 pounds frequently.  She has the occasional use of her right leg for the operation of foot controls.  In an 8-hour workday, she can stand/walk for 2 hours a[nd] sit for 6 hours.

[R. 18].

At Step Four, the ALJ determined that, based on her RFC, Sturdevant was unable to perform any past relevant work.  [R. 20].  At Step Five, he found that, considering Sturdevant's age, education, work experience and residual functional capacity, there are jobs existing in significant numbers in the national economy that Sturdevant could perform, including food order clerk, DOT Code 209.567-014, with approximately 350 jobs in Oklahoma; charge account clerk DOT 205.367-014, with approximately 300 jobs available in Oklahoma; and clerical mailer, DOT 209.587-010, with approximately 410 jobs in Oklahoma. [R. 21].

Accordingly, the ALJ found that Sturdevant had not been under a disability from May 28, 2013, through the date of the decision.  *Id.*

## Plaintiff's Allegations

On appeal, Sturdevant argues that the ALJ's RFC contradicts the RFC formulated by two state agency physicians; the ALJ failed to include  his own findings of a "severe" impairment of obesity and the right shoulder in the RFC; the ALJ failed to consider third party statements; and the ALJ's RFC is unsupported by his credibility determination.  [Dkt. #12 at 3].

## Analysis

### 1. Conflict Between Agency Doctors' RFC and ALJ's RFC

The ALJ gave "great weight" to the opinions of state agency doctors Emily Eisenhauer, M.D. and LMW, M.D., and he explicitly stated that he was adopting the RFC they formulated. However, the ALJ's RFC differed from the agency doctors' RFC.

Both agency doctors imposed lifting restrictions of twenty pounds occasionally and ten pounds frequently, while the ALJ's RFC permitted Sturdevant to lift/carry up to fifty pounds

4

occasionally and twenty-five pounds frequently and fifteen pounds occasionally and five pounds frequently with her dominant right arm alone.  [R. 18, R. 82 (Ex. 2A), R. 91 (Ex. 3A)].[2]

However, notwithstanding the variance in the RFC formulated by the ALJ, he posed a hypothetical to the vocational expert ("VE") which—in the VE's opinion—limited  Sturdevant to *sedentary* unskilled jobs.  [R. 71].  Based on the hypothetical, the VE identified three sedentary jobs he believed Sturdevant could perform, and the ALJ listed those jobs in his Step Five determination.[3]  Accordingly, the undersigned concludes that any error the ALJ made in weighing the state agency physician's opinions or formulating Sturdevant's RFC was harmless.  *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (no prejudice where giving greater weight to a medical opinion would not have helped claimant); *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012) (harmless error where ALJ developed a mental RFC more favorable to claimant than the consulting psychologist's findings).[4]

## 2. Evaluation of Obesity and Right Shoulder Impairment

Sturdevant asserts that the ALJ erred in failing to identify any limitations accounting for his finding that she has a "severe" impairment of obesity.  The ALJ acknowledged in his decision

---

[2] Additionally, while the agency doctors found the claimant could stand and/or walk six hours out of an eight-hour day and sit six hours out of an eight-hour day, the ALJ concluded she could only stand and/or walk two hours out of an eight-hour day and sit six hours out of an eight-hour day.  *Id.*

[3] Pursuant to 20 C.F.R. §§ 404.1567(a), 416.967(a), "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."

[4] Sturdevant also asserts the ALJ erred in relying on the opinion of state agency physician Dr. LMW, M.D., because he is "an unknown individual whose qualifications cannot be checked or verified."  [Dkt. #12 at 4].  This argument is inconsistent with her position that the ALJ erred in *not* adopting the RFC formulated by the agency doctors.  Additionally, plaintiff fails to cite any authority for her proposition that state agency physicians must identify themselves by their full name or that failure to do so is reversible error.   In any event, any error is harmless since—as discussed above—the ALJ ultimately identified only sedentary jobs at Step Five.

that claimant's obesity must be evaluated under the criteria of SSR 02-1p, which states that obesity is a risk factor that increases the chances for developing impairments in most body systems. [R. 18]. However, based on his review of the medical record, he concluded that "Ms. Sturdevant's obesity, while severe, does not appear to be a contributory factor to her physical activity limitations or to her ability to do basic work activities." *Id.*

The ALJ and the agency physicians focused, rightfully, on Sturdevant's functional limitations rather than on her status as an obese person. *See Jimison ex rel. Sims v. Colvin*, 513 Fed. Appx. 789, 793 (10th Cir. 2013) (unpublished) (rejecting claimant's argument that the ALJ should have included obesity in her RFC, because there was no evidence that her obesity caused functional limitations). Sturdevant never mentioned or discussed her obesity or its effect on her functional limitations in her adult function reports or in her hearing testimony. [R. 23-75, R. 223-230 (Ex. 8E), R 252-69 (Ex. 13E)]. Likewise, her attorney elicited no testimony indicating her obesity caused any limitations beyond those identified by the ALJ. [R. 23-75]. The undersigned concludes that Sturdevant's argument regarding her obesity is not persuasive.

Although the ALJ imposed a lifting restriction on Sturdevant's right arm, she complains that limits on reaching, pushing or pulling with the right arm should also have been imposed. [Dkt. #12 at 5]. The ALJ acknowledged that in 2012, Sturdevant was treated for right shoulder pain, which she described as being intermittent and moderate. [R. 19, R. 293-95 (Ex. 3F)]. However, he also noted that (1) in an examination on December July 15, 2013, consultative physician Subramamam Krishnamurthi, M.D., concluded she had normal range of motion in both shoulders; (2) on December 30, 2010, consultative examiner Mohammed Quadeer reached a similar conclusion; and (3) at Saint Francis Hospital on October 14, 2013, she demonstrated 5/5 in all of her extremities. [R. 19-20; R. 287 (Ex. 2F); R. 303, 305 (Ex. 4F); R. 316 (Ex. 5F)].

Moreover, as previously stated, the ALJ imposed a lifting restriction on Sturdevant's right arm and the jobs the VE identified are all sedentary.

### 3. Treatment of Third Party Statement

Sturdevant contends the ALJ "ignored" a third party statement from a former teacher, Kathryn S. Thompson, concerning claimant's dyslexia. [R. 260 (Ex. 14E)].[5]  In the letter, Ms. Thompson stated that Sturdevant had attended GED preparatory classes she taught, and her test scores were high third grade to low fourth grade in reading, fourth to fifth grade in math and third grade level in English.  *Id.*

The ALJ did not discuss the teacher's letter in his decision.  However, he explicitly stated that he had carefully considered "the entire record," [R. 18], and the Tenth Circuit has often explained that the court takes the ALJ at his word when he states that he has considered all of the evidence.  *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).  The ALJ acknowledged Sturdevant's testimony that she had tried to get her GED but could not because she is dyslexic. [R. 19, R. 34].  Additionally, the ALJ addressed statements about claimaint's mental capacity made by Sturdevant's husband in his third party adult function report, stating:

> [T]here is no measurement of the claimant's mental capacity to support or deny Mr. Sturdevant's statement about the claimant's poor ability to understand instructions or follow directions.  However, there is nothing in her work history suggesting she has a pattern of not following instructions or lacking understanding of them.  Two of her past jobs, fast food cook and department manager, were skilled jobs and undoubtedly required a fair amount of attention and concentration.

[R. 20, R. 215-222 (Ex. 7E)].  The ALJ gave "great weight" to the assessment by state agency psychologist Charlotte Ducote, Ph.D., who opined there was no evidence of restrictions due to

---

[5] Citing Ex. 4E (R. 199-207) Sturdevant also contends the ALJ ignored "evidence provided by . . . Plaintiff's friend,"  [Dkt. #12 at 5-6].  Sturdevant listed the friend, Jerry Clark, in Section 1.D. of the Disability Report – Appeal, as someone the agency could contact who knows about her illnesses, injuries, or conditions.  [R. 199 (Ex. 4E)].  However, contrary to plaintiff's assertion, there is no third party function report, nor any other type of statement by Jerry Clark, in the record.

dyslexia, noting Sturdevant had run a department at a store for several years and indicated on her daily activity form that she prepares meals, does housework, drives and socializes. [R. 20, R. 81 (Ex. 2A)].

The information in Ms. Thompson's letter is similar to claimant's testimony and her husband's observations, which the ALJ considered but discounted.  As a result, any error in the ALJ's failure to address the teacher's letter is harmless, because "the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Best-Willie v. Colvin*, 514 Fed. Appx. 728, 736 (10th Cir. 2013) (unpublished). *See also Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (declining to "adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony.").

Moreover, after Sturdevant testified at the hearing that she only had a seventh grade education and suffered from dyslexia, the ALJ, in his hypothetical to the VE, described an individual plaintiff's age, "with a limited education."  [R. 34, 71].  In response, the VE identified several unskilled jobs an individual with plaintiff's profile could perform.  [R. 21, 71-72].  The ALJ reasonably relied on the VE's testimony in determining that there were unskilled jobs Sturdevant could perform.  SSR 96-9P, 1996 WL 374185, at *10 n.8.

### 4. Credibility Determination

Sturdevant argues the ALJ erred in his credibility determination. "[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations, when supported by substantial evidence."  *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted).  Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings." *Id.* (internal quotation marks and citation omitted).  "[C]ommon sense, not technical

perfection, is [the] guide" of a reviewing court.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167

(10th Cir. 2012).

In assessing Sturdevant's credibility, the ALJ stated:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

[R. 20].  He supported this assessment by citing, *inter alia*, the following evidence:

- Consulting physician Dr. Krishnamurthi found that Sturdevant's motor strength is 5/5 in her biceps, triceps and hand grips bilaterally and she also has 5/5 strength in quadriceps, hamstrings, dorsiflexion and plantar flexion bilaterally. She was able to walk without her cane. She had normal range of motion in all joints except her injured right ankle's range of motion was slightly reduced due to pain.  [R. 20, R. 301-308 (Ex. 4F].

- Dr. Krishnamurthi's findings were mostly consistent with earlier assessment by consulting physician Dr. Quadeer, except that Dr. Quadeer found a light reduction in lumbosacral range of motion (70º of a possible 90º).  [R. 20, R. 283-291 (Ex. 2F)].

- As previously noted, state agency medical consultants Dr. Eisenhauer and LMW determined that Sturdevant could perform light work. [R. 20, R. 82 (Ex. 2A), R. 91 (Ex. 3A)].

- The ALJ also gave "great weight" to the opinion of agency psychologist Dr. Charlotte Ducote, who found that was no evidence that claimant's dyslexia or that she had any restrictions due to the dyslexia.  [R. 20, R. 81 (Ex. 2A)].

- "Little weight" was given to Mr. Sturdevant's statement that claimant needs one to two hours rest after walking ten to twenty feet, as claimant reported in her own function report that she could walk ten to fifteen minutes at a time (the walking distance she recorded was indecipherable) and she only needed ten to fifteen minutes of rest afterward—not the one to two hours her husband claimed she needed.  [R. 20; R. 220 (Ex. 7E); R. 228 (Ex. 8E)].

- As previously noted, Mr. Sturdevant's opinions about claimant's mental capacity were discounted because they were inconsistent with her past work history.  [R. 20, R. 215-222 (Ex. 7E)].

Support in the medical record is among the various factors properly considered in making a credibility determination.  20 C.F.R. §§ 404.1529, 416.929.  In his decision, the ALJ discussed the portions of the records he believed contradict Johnson's subjective statements, thus satisfying his duty to support his credibility finding with substantial evidence.  Furthermore, it is not the diagnosis of a condition, but the functional consequences of the condition that form the basis of a disability determination. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of arthritis says nothing about the severity of the condition); *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (unpublished) (diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the cause of a claimant's condition).

The ALJ's decision is supported by substantial evidence, and the court "may neither reweigh the evidence nor substitute [its] discretion for that of the Commissioner."  *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Conclusion

The undersigned finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the undersigned United States Magistrate Judge **RECOMMENDS** that the decision of the Commissioner finding Sturdevant not disabled be **AFFIRMED**.

**Objections**

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation, but must do so by January 18, 2017. If specific written objections are timely filed, the District Judge assigned to this case will make a *de novo* determination in accordance with Rule 72(b).  A party waives District Court review and appellate review by failing to file objections that are timely and sufficiently specific (the "firm waiver rule").  *Moore v. Astrue*, 491 Fed. Appx. 921, 923 (10th Cir. 2012) (unpublished), citing *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

**ENTERED** this 5th day of January, 2017.

Paul J. Cleary
United States Magistrate Judge

11